OPINION
{¶ 1} Plaintiffs-appellants, numerous taxpayers of the City of Huber Heights, Ohio, (hereinafter "the Taxpayers"), appeal from a summary judgment rendered against them in an action seeking to declare as void an ordinance passed by the City Council that re-zoned a parcel of land. The Taxpayers contend that the trial court erred in rendering summary judgment against them because there is no competent evidence to support its decision and because the evidence supported a finding that the City abused and exceeded its power in enacting the ordinance.
 {¶ 2} We conclude that the trial court's decision is supported by the evidence and that the evidence was properly a part of the record. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Defendants-appellees, Franciscan Medical Center Dayton Campus, Anthony Usas, and John and Laura Heidorn, own approximately thirty-eight acres of property located in the City of Huber Heights. Defendant-appellee, R.G. Properties, Inc. is a commercial real estate development company. Defendant-appellee, the City of Huber Heights, Ohio, is a charter city. For ease of reference, the defendants-appellees shall be collectively referred to as "the City."
 {¶ 4} Section 4.01 of the Huber Heights City Charter, which sets forth the powers granted to the City Council, states as follows: "[e]xcept as otherwise provided under this Charter, all legislative and other powers of the City shall be vested in the Council." The Charter gives the Council "the power to enact ordinances, resolutions and other measures, and to take any other action it determines to be necessary to implement this Section, including the distribution or allocation of authority and responsibility to exercise powers and to carry out municipal functions among * * * the City's boards and commissions."
 {¶ 5} Section 9.04 of the Charter created the City Planning Commission, which has the power, among others, to "prepare and recommend to Council such ordinances and resolutions as will promote the general welfare of the City and its inhabitants." Pursuant to Section 9.05 of the Charter, the Board of Zoning Appeals "shall hear and determine applications for variances from the provisions of the zoning ordinances and resolutions, in harmony with the intent and purposes of the zoning ordinances and resolutions and in accordance with procedures provided therein."
 {¶ 6} In October, 2001, R.G. Properties, Inc., acting as agent for the property owners, filed an Application for Rezoning seeking to have the subject property changed from its current zoning to a Planned Commercial Development. A Planned Commercial District is a form of Planned Unit Development ("PUD").
 {¶ 7} Pursuant to the Huber Heights Zoning Code, a party must follow certain procedures before an area can be re-zoned into a PUD. For example, an application for re-zoning must be filed with appropriate supporting documentation, including a development plan. The Planning Commission must then review the application and hold public hearings thereon. If the Commission approves the application, the City Council must then, likewise, review the application and hold public hearings prior to approving the requested change.
 {¶ 8} From the record it appears that these procedures were followed. R.G. filed the appropriate documents. Thereafter, the Planning Commission held several public sessions to consider the development, during which the Taxpayers were given an opportunity to present their objections. The Planning Commission then voted to approve the application, subject to the approval of the City Council. The City Council then held a public session regarding the development, and the Taxpayers were again give the opportunity to object. On February 11, 2002, the City Council adopted Ordinance No. 2002-0-1323, which re-zoned the property into a Planned Commercial District, approved the development plan for the property, and declared the ordinance to be an emergency measure.
 {¶ 9} The Taxpayers filed an action in the Montgomery County Court of Common Pleas seeking a declaration that the ordinance is void and that the City abused its powers in enacting the ordinance. Motions for summary judgment were filed by all the parties. The Taxpayers argued that the PUD, as created, violated the zoning code, in that it permitted the development to have two hundred four less parking spaces than required by the zoning code and because it permitted the parking spaces to be made smaller than required by the zoning code. The Taxpayers also argued that the City Council did not have the power to permit these variances from the code, and that the City Council therefore exceeded its power by granting the variances. In rendering summary judgment in favor of the City, the trial court found that the City followed all procedural requirements in adopting the PUD, that the City Council possessed the authority to grant the PUD, and that the PUD complied with all relevant zoning requirements. From this judgment, the Taxpayers appeal.
 II {¶ 10} We first address the Taxpayers' Third Assignment of Error, which is as follows:
 {¶ 11} "The Trial Court Erred In Denying Plaintiffs' Motion For Summary Judgment Because The City Approved The Rezoning And Development Plans In Violation Of The City's Zoning Code Provisions."
 {¶ 12} The Taxpayers contend that the trial court erred in rendering summary judgment against them, because the evidence demonstrated that the City Council exceeded its power in enacting the subject ordinance. The taxpayers argue that pursuant to the Charter, the power to grant variances was vested in, and limited to, the Board of Zoning Appeals, because Section 9.05 of the Charter states that the BZA shall hear and determine variances. The taxpayers also argue that, despite the fact that the Council does not have the power to grant any variances from the zoning code, it nevertheless approved the PUD with variances that did not comport with the terms of the zoning code.
 {¶ 13} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,369-370, 1998-Ohio-389; see, also, Civ.R. 56(C).
 {¶ 14} The issue for determination in this case is whether the City Council had the authority to enact the ordinance creating the PUD and any variances contained therein.
 {¶ 15} A council of a charter city possesses powers superior to those of its board of zoning adjustment. City of Columbus v. BazaarMngmt., Inc. (1983), Franklin App. No. 82AP-33, citing State, ex rel.Davis Investment Co., v. City of Columbus (1963), 175 Ohio St. 337. In the case before us, the Huber Heights City Charter reposes broad power in the City Council, including "all legislative and other powers of the City." Indeed, a reading of the entire Charter indicates that the Council's powers take precedence over those of any of the City's boards, and that, by extension, the Council has the power to grant variances. Furthermore, "`the implementation of a planned unit development ("PUD"),
as well as its creation, is a legislative act subject to referendum' because the action of approving a plat is the functional equivalent of traditional legislative zoning, although the entire PUD area is covered by the same nominal zoning classification both before and after the approval of the plat." State ex rel. Crossman Communities of Ohio, Inc.v. Greene Cty. Bd. of Elections (1999), 87 Ohio St.3d 132, 136-137,1999-Ohio-308, citations omitted.
 {¶ 16} Since the creation and implementation of a PUD is a legislative act, and the City Council of Huber Heights is vested with all legislative power by the Charter and by law, we conclude that the Council has the power to approve the PUD at issue in this case.
 {¶ 17} We reject the argument that the Council exceeded its power by granting variances within the PUD. Specifically, we conclude that although the Taxpayers are correct in their assertion that the Charter gives the BZA power to grant variances, the Charter does not purport to make exclusive the BZA's power to grant variances. Furthermore, an argument that the BZA's power to grant variances is exclusive is directly contradicted by the Charter's having expressly granted the Council "all legislative and other powers of the City." The non-exclusive nature of the BZA's power to grant variances is recognized in the City's Subdivision Regulations, which give the Planning Commission authority to approve variances. Finally, the zoning code specifically gives ultimate power to approve a PUD to the Council, and does not give the BZA any powers with regard to the creation of PUDs.
 {¶ 18} From our reading of the City Charter, we agree with the trial court that the City Council possessed the authority to approve the PUD at issue in this case, and to pass the ordinance that did so. Accordingly, the Third Assignment of Error is overruled.
 III {¶ 19} The Taxpayers' Second Assignment of Error provides:
 {¶ 20} "The Trial Court Erred In Granting Defendants' Motions For Summary Judgment And In Denying Plaintiffs' Motion Where The City Planning Director's And City Engineer's Testimony Established That Factual Findings Required By The Zoning Code Could Not Be Made."
 {¶ 21} The Taxpayers contend that the evidence presented to the trial court demonstrates that the proposed development did not comply with the requirements of the zoning code. Specifically, they contend that pursuant to Section 1171.06 of the zoning code, no approval could be given for the PUD unless the evidence showed that: (1) it is "consistent with [the City's] comprehensive development plan"; and (2) it is "accessible from public roads that are adequate to carry the traffic that shall be imposed upon them by the proposed development." They argue that the evidence does not demonstrate compliance with these two required findings and that the trial court therefore erred in rendering summary judgment in favor of the City.
 {¶ 22} When reviewing enacted municipal legislation, there is a general presumption that the legislation is valid. Alsenas v.Brecksville (1972), 29 Ohio App.2d 255. The burden of showing the invalidity is upon the party challenging the legislation, and the presumption of validity remains until the party having the burden of proof clearly establishes invalidity. Pearce v. City of Youngstown (1954),100 Ohio App. 22. The Taxpayers must establish that the City "clearly abused its corporate powers" when it enacted the ordinance. State exrel. Osting v. Sidney, 2001-Ohio-2175.
 {¶ 23} We begin with the claim that in order to be approved the PUD must be consistent with the City's Comprehensive Plan ("the Plan"). According to the Taxpayers, the PUD is inconsistent with the Plan because it will be located in an area designated by the Plan as "low-density residential."
 {¶ 24} The Plan itself states that it "is purposely designed to be flexible so as to be responsive to changing conditions and priorities.The Plan should therefore not be thought of as a rigid blueprint, butrather as a general guide to the City's growth and change. The proposalsof the Plan do not have the authority of law or regulation, rather, theyare broadly based upon recommendations for future development andimprovement over a relatively long period of time. Such a document must be open to refinement and change, where and when necessary, to reflect new conditions and issues, or to reflect changing goals and objectives." (Emphasis n the original).
 {¶ 25} From the above-quoted passage, it follows that strict compliance with the Plan in the formation of a PUD is not required. There is evidence in the record, in the form of deposition testimony filed with the trial court, to the effect that the Council's decision to enact the ordinance approving the proposed PUD was not inconsistent with the Plan.
 {¶ 26} The Plan is legislation enacted by the Council. So is the ordinance approving the PUD at issue in this case. Whether the later legislative act of approving the PUD is consistent with the prior legislative act represented by the Plan is immaterial. In enacting legislation, a legislative authority is not required to follow its previously enacted legislation, but may make new, different, and inconsistent provisions, in exercising the legislative power.
 {¶ 27} We next turn to the Taxpayers' claim that the proposed development did not meet zoning requirements because the evidence did not demonstrate that the PUD was accessible from public roads adequate to carry the traffic the development would impose upon them. The Taxpayers' argument is centered upon their contention that the proposed development will be located near the interchange of Interstate 70 and Brandt Pike, and their claim that this interchange is not capable of handling an increase in traffic. However, upon review of the record, we find this argument without merit. First, the proposed PUD is to be located on Brandt Pike, and it will have access to Brandt Pike. The evidence in this case, again in the form of depositions on file with the trial court, indicates that Brandt Pike is currently below its rated capacity and that the increase in traffic associated with the PUD will not cause it to exceed that capacity. Moreover, the relevant portion of the zoning code does not require that all roads in the area surrounding the PUD be able to handle an increase in traffic; only the road to which the PUD will have access is subject to that requirement.
 {¶ 28} The Second Assignment of Error is overruled.
 IV {¶ 29} The Taxpayers' First Assignment of Error states as follows:
 {¶ 30} "The Trial Court Erred In Granting Defendants' Motions For Summary Judgment When There Was No Evidence In The Record That Complied With Civ.R. 56(C) To Support Their Motions, And The Trial Court Improperly Resolved Disputed Issues Of Material Fact In Defendants' Favor."
 {¶ 31} The Taxpayers contend that the City did not comply with Civ.R. 56(C) with regard to its submission of evidence, so that the trial court erred by considering the City's evidence. They also claim that the record shows that the trial court erred in reaching its decision, because it stated that it relied on certain affidavits that, as noted by the Taxpayers, are not a part of the record.
 {¶ 32} We find that this argument has no effect on the outcome of this appeal. First, our determination of the scope of the City Council's authority hinges solely upon a legal issue, and does not require the consideration of any evidence submitted by the City. Second, we have concluded that the trial court's factual findings in determining whether the facts support the City's actions are supported by deposition testimony that is properly a part of the record. Finally, it appears to us that the trial court's stated reliance upon affidavits was inadvertent. In any event, there is competent evidence in the record to support the trial court's decision. Therefore, the First Assignment of Error is overruled.
 V {¶ 33} All of the Taxpayers' Assignments of Error having been overruled, the judgment of the trial court is affirmed.
BROGAN and GRADY, JJ., concur.